UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

                                Chapter 7

Marco A. Herrera,

                                Case No. 10-46137-CEC

                         Debtor.
-------------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Martin A. Mooney, Esq. | George Poulos, Esq. |
| Deily, Mooney & Glastetter, LLP | 111 Livingston Street |
| 8 Thurlow Terrace | Suite 110 |
| Albany, NY 12203 | Brooklyn, NY 11021 |
| Attorneys for the Creditor | Attorney for Debtor |

CARLA E. CRAIG
CHIEF UNITED STATES BANKRUPTCY JUDGE

This matter comes before the Court on the motion of Capital One Auto Finance ("Capital One") for relief from the automatic stay and the cross motion of Marco Herrera (the "Debtor") to redeem a motor vehicle, a 2006 Yukon Denali, under 11 U.S.C. § 722, from the lien held by Capital One. For the following reasons, the Debtor's Cross Motion is granted in part and denied in part, and the automatic stay provided under § 362(a)[1] is terminated in connection with the 2006 Yukon Denali pursuant to § 362(h).

## Jurisdiction

This Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334(b) and 157(b)(2) (G) and (O), and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052.

## Background

The following facts are undisputed.

On June 29, 2010, Marco A. Herrera filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor filed Official Form 8, The Chapter 7 Individual Debtor's Statement of Intention ("Statement of Intention"), with the petition, stating the Debtor's intent to redeem his 2006 Yukon Denali from the lien held by Capital One. The Debtor listed the 2006 Yukon Denali ("Debtor's Vehicle" or "Yukon Denali" or "the Vehicle") on Schedule B with a value of $6,425. Pursuant to § 341(a), the first meeting of creditors was scheduled for August 6, 2010. On September 3, 2010, Capital One filed a motion for relief from the automatic stay under

---

[1] Unless otherwise indicated, statutory citations are to provisions of Title 11, U.S.C., and citations to Rules are to the Federal Rules of Bankruptcy Procedure.

§ 362(d)(1) (the "Motion").  The Chapter 7 Trustee filed a no asset report on September 20, 2010.  On October 14, 2010, the Debtor filed opposition to the Motion, and filed a cross motion under § 722 to redeem the 2006 Yukon Denali for $6,425 from the lien held by Capital One ("Cross Motion").  On October 29, 2010, Capital One filed a Response to the Cross Motion, disputing the Debtor's proposed redemption value.  On March 31, 2011, the Court held an evidentiary hearing on the Cross Motion and Capital One's opposition thereto (the "Hearing").  Several exhibits were received in evidence by stipulation.  (Tr.,[2] 12:2-16.)  The Debtor stipulated to the admission of Creditor's Exhibit 1, an appraisal of the Yukon Denali in the amount of $21,800, performed by Doug Karlsen, Capital One's expert witness as to vehicle appraisals.  The Debtor also stipulated to the admission of Creditor's Exhibit 2, copies of certain pages of the National Automobile Dealers Association Official Used Car Guide, Eastern Edition ("NADA Guide").

Capital One stipulated to the admission of Debtor's Exhibit 1, a Kelley Blue Book page printed out from the internet on March 30, 2011, reflecting the current private party value of a 2006 GMC Yukon XL 2500 SLE Sport Utility 4D (2WD), in the amount of $9,015.  Capital One also stipulated to the admission of Debtor's Exhibit 2, photographs provided by the Debtor of the 2006 Yukon XL Denali.  The Court subsequently received Debtor's Exhibit 3 over Capital One's objection, a repair estimate in the amount of $5,195.21.  (Tr., 22:12-22.)

At the Hearing, the Debtor testified as to the condition of the vehicle.  Capital One introduced the testimony of Mr. Karlsen, who testified that the replacement value of the Debtor's Vehicle is between $15,000 to $19,500 (Tr., 43:10-22).

---

[2] Citations to "Tr." refer to the transcript of the evidentiary hearing held on March 31, 2011.

Discussion

I - Redemption Value under § 506(a)(2)

Redemption of property from a lien is governed by Rule 6008 and §§ 722 and 506(a). Rule 6008 provides that a court may authorize the redemption of property under § 722 on motion by the debtor, trustee, or debtor in possession, after a hearing on notice. Fed. R. Bankr. P. 6008.

Section 722 provides that

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

11 U.S.C.§ 722.

As provided by § 506(a)(2), the amount of the creditor's allowed secured claim for purposes of redemption under § 722 is based on replacement value as of the date of the filing of the petition:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 506(a)(2).

The party seeking redemption "bear[s] the burden of proving the appropriate redemption value by a preponderance of the evidence." In re Ard, 280 B.R. 910, 913 (Bankr. S.D. Ala. 2002) (citing In re Brown, 244 B.R. 603, 610-611(Bankr. W.D. Va. 2000) (where creditor is releasing lien and rights are reduced, burden is correctly on debtor, who benefits from the process)); Boyer v. Simon (In re Fort Wayne Telsat, Inc.), 2009 Bankr. LEXIS 283, at *8 (Bankr. N.D. Ind. Feb. 12, 2009) (debtor bears burden of proving value for redemption purposes under § 722); In re Kidwell, 2007 Bankr. LEXIS 3438, at *8 (Bankr. E.D. Tenn. Oct. 4, 2007) (debtor has burden of proof by a preponderance of the evidence with respect to valuation); In re Campbell, 2006 Bankr. LEXIS 4170, at *4 (Bankr. S.D. Iowa Oct. 2, 2006) (same).

This evidentiary burden requires the Debtor to prove that the replacement value of the Vehicle is, more likely than not, $6,425. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 329 (2007) (preponderance standard requires proof that fact is more likely than not true). "'When the evidence is evenly balanced, the [party with the burden of persuasion] must lose.'" Rambo, 521 U.S. 121, 137 (quoting Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 512 U.S. 267, 281 (1994).

In support of the claim that the redemption value of the Vehicle is $6,425, the Debtor submitted Debtor's Exhibit 1, a Kelley Blue Book ("KBB") page stating that the private party value of a 2006 GMC Yukon XL 2500 SLE Sport Utility 4D (2WD) ("Yukon") is $9,015; Debtor's Exhibit 2, photographs taken by the Debtor of his vehicle, the 2006 Yukon XL Denali; Debtor's Exhibit 3, a repair estimate in the amount of $5,195.21; and offered his own testimony as to the condition of the Vehicle.

Capital One argues that Debtor's Exhibit 1, on which the Debtor bases his claim that the vehicle should be valued at $6,425 for redemption purposes, lacks any probative value because it

relates to a different vehicle model.  Capital One points out that Debtor's Exhibit 1 is a KBB valuation of a 2006 GMC Yukon, not of Debtor's Vehicle, which is a 2006 GMC Yukon Denali. Capital One argues that Debtor's Exhibit 1 cannot provide a basis for valuation of the Debtor's Vehicle because there are significant differences between the 2006 Yukon model reflected in Debtor's Exhibit 1 (one of six 2006 Yukon models) and the Vehicle (one of twelve 2006 Yukon Denali models) (see Creditor's Exhibit 3).  This contention is also supported by Debtor's Exhibit 3, a written repair estimate, which details the features and options included in the Debtor's Vehicle.  Even a brief comparison between Debtor's Exhibits 1 and 3 reveals such differences between the vehicles as four-wheel drive in the Debtor's Vehicle versus two-wheel drive in the vehicle on Debtor's Exhibit 1, as well as additional features in the Debtor's Vehicle not included in the 2006 Yukon, such as running boards and heated remote control mirrors.  Other features of the Yukon Denali not in the Yukon were pointed out in testimony by Capital One's expert, Mr. Karlsen, whose qualifications as an expert in the field of auto appraisal were stipulated to by Debtor's counsel (Tr., 32:21-25; 33:1-3.)  Mr. Karlsen testified that the Debtor's Vehicle included heated seats, adjustable foot pedals, tire pressure monitor and a navigation system, all of which are not included in the Yukon.  (Tr., 46:13-15.)

In addition to the obvious differences between the vehicle models, Capital One also argues that Debtor's Exhibit 1 is entitled to little weight as evidence of the Vehicle's value because it is not based on the Vehicle Identification Number ("VIN"), which "determines what the options are in the car, what the frame is on the car . . . . it's the blueprint of the car." (Testimony of Mr. Karlsen, Tr., 34:20-22.)  Mr. Karlsen testified that Creditor's Exhibit 1, an appraisal he performed of the Yukon Denali in the amount of $ 21,350, is based on "the Debtor's actual VIN number and actual model number."  (See Testimony of Mr. Karlsen, Tr., 39:4-6.)

Mr. Karlsen further testified that this valuation takes into account the mileage on the Vehicle, and is further reduced by factors such as gas prices (Tr., 43:10-13) as well as needed repairs (Tr., 39:7-19), which he estimated at $2,109.40.  When those factors are considered, Mr. Karlsen testified, "dealers out there [would] sell this truck on the lot anywhere from fifteen . . . to nineteen-five, depending on condition . . . . [and] [t]his one fares somewhere in that average." (Tr., 43:19-22.)

Ordinarily, a KBB valuation, such as Debtor's Exhibit 1, would be an appropriate starting point to determine replacement value pursuant to § 506(a)(2).  In re Penny, 2011 Bankr. LEXIS 244, at *5-6 (Bankr. N.D. Ca. January 1, 2011) (KBB appropriate starting point for valuation analysis) (citing In re Morales, 387 B.R. 36, 45 (Bankr. C.D. Ca. 2008) (analyzing case law on methods of valuation under § 506(a), concluding that "value should be calculated by adjusting Kelley Blue Book or N.A.D.A. guide retail value for a *like vehicle* by a reasonable amount in light of additional evidence . . . regarding the condition of the vehicle and any other relevant factors.")) (emphasis added).  Valuation must be determined on a case-by-case basis and depends on the evidence presented and testimony based on book values.  In re Gonch, 435 B.R. 857, 864 (Bankr. N.D.N.Y. 2010) (discussing local rules adopted by the District of Vermont, Northern District of West Virginia, and Eastern District of Missouri to establish methods of valuation, all of which employ either KBB or NADA as starting points to determine valuation absent any evidence to the contrary); In re Martinez, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009) (adopting KBB value offered by debtor in court's valuation analysis under § 506(a)).

However, it is clear that Debtor's Exhibit 1 does not reflect a valuation of the Debtor's car, a 2006 GMC Yukon *Denali*, but of a 2006 GMC Yukon XL 2500 SLE Sport Utility 4D (2WD).  The two are different vehicle models, and based on the testimony of Mr. Karlsen as well

as the Debtor's Exhibits 1 and 3, it is apparent that the Debtor's Vehicle has significantly more features and options than the vehicle valued on Debtor's Exhibit 1. For this reason, Debtor's Exhibit 1 is not entitled to any weight in assessing the value of the Vehicle. See In re Guidry, 350 B.R. 661, 666 (Bankr. E.D. La. 2006) (adopting NADA values submitted by creditor because those submitted by debtor were not based on the specific VIN and packages contained in the vehicle in question).

Likewise, Debtor's Exhibit 3, the repair estimate, cannot be afforded any weight in determining the downward adjustment for necessary repairs. The Court admitted Debtor's Exhibit 3 into evidence over Capital One's hearsay objection for the limited purpose of showing that the Debtor received "an offer . . . to repair the car for [$5,195.21]." (Tr., 21:23-25.) While Capital One offered Mr. Karlsen's testimony explaining how his estimate of the cost to repair the Vehicle was calculated, the Debtor failed to offer any testimony in support of the calculation reflected on Debtor's Exhibit 3. Mr. Karlsen testified that Debtor's repair estimate is "overpriced" because it reflects the use of new factory parts, and that use of such parts on a six year old vehicle is "not industry standard because insurance companies . . . only accept new parts on a six-year old vehicle if used parts weren't available." (Tr., 41:2-20.) Mr. Karlsen estimated the repairs to be $2,109.40 based on the use of used parts. Although Mr. Karlsen testified that he did not have access into the Vehicle, all of the repairs shown on Debtor's Exhibit 3 are to the exterior of the Vehicle. Based on the evidence presented, the Debtor has failed to establish that the replacement value of the Vehicle is more likely than not $6,425.

Upon this record, including the credible evidence of valuation offered by Capital One, the Court finds that the replacement value of the Vehicle for purposes of redemption is $17,000.

II - <u>Relief from the automatic stay under § 362(h)</u>.

Section 521(a) provides in relevant part:

(a) The debtor shall-

. . .

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate-

> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
>
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

11 U.S.C. § 521(a)(2).

Section 362(h) provides in relevant part:

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)-
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal

> > property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
>
> > (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h).

The Debtor timely filed the Statement of Intention with his petition, indicating his intent to redeem the Yukon Denali. However, pursuant to § 521(a)(2) the Debtor was required to perform his intention as provided on the Statement of Intention within 30 days after the first date set for the meeting of creditors under section 341(a), which was scheduled for August 6, 2010. The Debtor did not move to redeem until October 14, 2010, when he filed his cross motion to redeem in opposition to Capital One's relief from stay motion. Therefore, as a result of the Debtor's failure to timely perform his intention pursuant to § 521(a)(2)(B), the automatic stay in connection with the Debtor's Vehicle terminated in accordance with § 362(h), allowing Capital One to pursue all rights and remedies available to it under applicable law in connection with the Yukon Denali. See In re Ebbrecht, 2011 Bankr. LEXIS 1761, at *11 (Bankr. E.D.N.Y. May 11, 2011) (stay terminates automatically under § 362(h)); In re Farley, 2011 Bankr. LEXIS 1237, at *11 (Bankr. E.D.N.Y. April 6, 2011); see also 3-362 Collier on Bankruptcy P 362.11 (§ 362(h) terminates a stay "automatically without a stay relief proceeding if section 362(h) is applicable.").

One court has held that the termination of the stay provided under § 362(a) extinguishes a debtor's right to redeem under § 722. In re Buck, 331 B.R. 322, 326 (Bankr. N.D. Ohio 2005). This Court respectfully disagrees with that conclusion. While the Code expressly provides for the termination of the stay upon a debtor's failure to comply with the time limits set forth in § 521(a)(2), the Code contains no language that terminates a debtor's right to redeem under § 722 upon the failure to do so within the time limits set forth in §§ 521(a)(2) (A) and (B). Moreover, § 521(a)(2)(C) provides that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)." The phrase, "except as provided in section 362(h)," added to § 521(a)(2)(C) by BAPCPA, limits the effect of failure to redeem within the § 521(a)(2)(B) time limit, to the termination of the automatic stay under § 362(h), leaving all other rights of the debtor under the Code intact. See In re Foster, 2006 Bankr. LEXIS 4716 (Bankr. N.D. Ga. Feb. 28, 2006) (holding that debtor's right to redeem did not terminate based on failure to file statement of intention and to redeem within time limits provided in § 521(a)(2)); In re Bright, 2005 Bankr. LEXIS 869 (Bankr. S.D. Fla. Jan. 11, 2005) (allowing debtor to reopen case and redeem after entry of discharge, finding expiration of the time limit provided in § 521(a)(2)(B) does not alter chapter 7 debtor's right to redeem); In re Rodgers, 273 B.R. 186, 192 (Bankr. CD. Ill. 2002) (allowing debtor to redeem despite failure to file motion within time limit provided by § 521(a)(2)(B) citing § 521(a)(2)(C)). Obviously, the Debtor's right to redeem the Vehicle terminates, at a minimum, when the Debtor's rights in the Vehicle are extinguished under applicable state law.

Conclusion

For the foregoing reasons, the Debtor's motion to redeem the Yukon Denali for $6,425 is denied; the Debtor may redeem the Vehicle pursuant to § 722 for $17,000; and the automatic stay provided under § 362(a) has terminated in connection with the Yukon Denali pursuant to § 362(h).  A separate order shall issue herewith.



**Dated: Brooklyn, New York**
**July 8, 2011**

/s/ Carla E. Craig
**Carla E. Craig**
**United States Bankruptcy Judge**